**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ROGER CHARLES DAY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-2004 (EGS) |
| | ) | |
| U.S. DEPARTMENT OF STATE, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**

Roger Charles Day, Jr. ("plaintiff"), who currently is incarcerated at the United States Penitentiary in Terre Haute, Indiana, brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, and the Privacy Act, *see* 5 U.S.C. § 552a, against the United States Department of State.  This matter is before the Court on Defendant's Motion for Summary Judgment (ECF No. 18), Plaintiff's Cross-Motion for Summary Judgment under the Privacy Act (ECF No. 26), and Defendant's Motion for Leave to File the Amended Declaration of Susan C. Weetman (ECF No. 38).  The Court GRANTS leave to file the amended declaration, and for the reasons discussed below, GRANTS defendant's summary judgment motion and DENIES plaintiff's cross-motion.

**I. BACKGROUND**

**A. The State Department's Office of Information Programs and Services**

The Office of Information Programs and Services ("IPS"), among other functions, receives and responds to FOIA and Privacy Act requests to the State Department.  Def.'s Statement of Material Facts As To Which There Is No Genuine Issue (ECF No. 18-2, "Def.

1

SMF") ¶ 13; Pl.'s Counter-Statement of Disputed Facts (ECF No. 22 at 10-23, "Pl. SMF") ¶ 13; *see* Decl. of Eric F. Stein (ECF No. 18-3, "Stein Decl.") ¶¶ 1-2. IPS staff members are "familiar[] with the holdings of the Department's records systems, applicable records disposition schedules, and the substantive and functional mandates of numerous Department offices and Foreign Service posts and missions." Stein Decl. ¶ 12; *see id.* ¶ 16. Armed with such knowledge, IPS staff members "determine which offices, overseas posts, or other records systems within the Department may reasonably be expected to contain the records requested." *Id.* ¶ 12. "Each office within the Department [and] each Foreign Service post and mission[] maintains files concerning foreign policy and other functional matters related to the daily operations of that office, post, or mission." *Id.* ¶ 13. Ordinarily these files are "working copies of documents, information copies of documents maintained in the Central Foreign Policy Records collection, and other documents prepared by or furnished to the office in connection with the performance of its official duties, as well as electronic copies of documents and email messages." *Id.*

IPS staff rely "on the knowledge and expertise of the employees of each bureau/office/post to determine the files and locations reasonably likely to house responsive records and the best means of locating such records," including electronic records. *Id.* ¶ 16. When IPS receives records retrieved from a State Department office, Foreign Service post or mission, its staff reviews "the retrieved material to determine responsiveness and to identify non-exempt material for release to the requester." *Id.* ¶ 15. If it were determined that any material is exempt from disclosure, IPS staff "review[] this material to ensure that all non-exempt, segregable information [is] released[.]" *Id.*

**B. Plaintiff's FOIA and Privacy Act Requests**

Plaintiff submitted a request under FOIA and the Privacy Act to the State Department on April 20, 2020, Def. SMF ¶ 4; Pl. SMF ¶ 4, for "all records in the US Embassy in Belize specifically but not limited to the [Regional Security Officer] in Belize in 2007-2008," Stein Decl., Ex. 1 (ECF No. 18-3) at 19.[1]  IPS assigned the request Case Number F-2020-05968. Stein Decl. ¶ 5; *see id.*, Ex. 2 (ECF No. 18-3) at 22.  Staff determined that records responsive to the request were reasonably likely to be found in (1) Retired Records, (2) eRecords Archive, (3) Bureau of Diplomatic Security, and (4) the United States Embassy in Belmopan, Belize.  Stein Decl. ¶ 14.

Defendant represents that its searches for records responsive to plaintiff's FOIA requests, described in greater detail below, yielded 74 responsive records.  Def. SMF ¶ 12.  According to the declarant, the records "at issue in this case were collected as part of the U.S. Government's law enforcement efforts to locate and extradite Plaintiff."  Stein Decl. ¶ 45.  Of these 74 records, the State Department released 22 records in full, released 41 records in part, and withheld 11 records in full, relying on Exemptions 5, 6, 7(C), 7(D) and 7(E), Def. SMF ¶ 12; Pl. SMF ¶ 12; *see generally* Decl. of Susan C. Weetman (ECF No. 24-2, "First Weetman Decl."), Ex. 1 (ECF No. 24-3, "Vaughn Index").[2]

---

[1]     Unless stated otherwise, page numbers are designated by CM/ECF.

[2]     Plaintiff disputes the number of responsive records.  *See* Pl. SMF ¶¶ 12, 58.  Defendant attributes "[t]he disparity between the number of documents released in full or in part in the [State] Department's release determination letters and the number of documents described in its Vaughn Index" to its inadvertent production of two documents twice and omission of one document from the original Vaughn Index.  First Weetman Decl. ¶ 5.

## II. LEGAL STANDARD

The "vast majority" of FOIA cases can be decided on motions for summary judgment.  *Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). Courts will grant summary judgment to an agency as the moving party if it shows that there is no genuine dispute as to any material fact and if the agency is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records."  *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)).

## III. DISCUSSION

### A. Defendant's Summary Judgment Motion

#### 1. Searches for Responsive Records

"An agency is required to perform more than a perfunctory search in response to a FOIA request."  *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011).  It must "demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents."  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal quotation marks and citations omitted).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*."  *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original) (citations omitted).  To meet its burden, an agency may rely on affidavits or declarations explaining the method and scope of its search, *see Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982)), and such affidavits or declarations are

"accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and internal quotation marks omitted).  At a minimum, the agency must "specify 'what records were searched, by whom, and through what process.'" *Rodriguez v. Dep't of Defense*, 236 F. Supp. 3d 26, 38 (D.D.C. 2017) (quoting *Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994)).  If the record before the Court "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

### a. Retired Records

The declarant describes the Retired Records Management System ("RIMS") as "a searchable database that automates the processing of records retired to the Records Service Center and tracks the status of all retired files received at the Records Service Center from the point of receipt to ultimate disposition."  Stein Decl. ¶ 17.  An IPS Government Information Specialist "can search both the full-text of the retired file manifests [and] the metadata (i.e., database fields) in the RIMS database."  *Id*.  A retired file manifest "serve[s] as an index of the contents of retired paper and electronic files" and may lead the researcher "to particular file folders or documents in retired files."  *Id.*; *see* Def. SMF ¶ 16; Pl. SMF ¶ 16.  The declarant explains that a manifest may "not contain sufficient detail to indicate the exact contents maintained under a given subject," and "when . . . potentially responsive files are identified," they are "retrieved for a . . . manual search of their . . . contents."  Stein Decl. ¶ 17; *see* Def. SMF ¶ 16; Pl. SMF ¶ 16.

An IPS Government Information Specialist searched RIMS using "the search terms 'Roger Day' and 'Roger Charles Day,' bounded by the date range January 1, 2007, to December 31, 2008." Stein Decl. ¶ 18; *see* Def. SMF ¶ 17; Pl. SMF ¶ 17.

### b. Bureau of Diplomatic Security

The State Department's Bureau of Diplomatic Security ("DS"), the declarant explains, "is responsible for providing a safe and secure environment for the conduct of U.S. foreign policy." Stein Decl. ¶ 19. To this end, DS designs and maintains security programs for every diplomatic mission worldwide. *See id.* Within the United States, among other functions, DS investigates passport and visa fraud, conducts personnel security investigations, and protects the Secretary of State and dignitaries visiting the United States from other countries. *See id.* Its "Freedom of Information and Privacy Act Office ('DS/MGT/FOIA-PA') reviews all incoming FOIA requests, determines which DS components are reasonably likely to have responsive records, and . . . tasks those components with performing searches." *Id.* ¶ 20.

A Senior Reviewer at DS/MGT/FOIA-PA searched "a DS shared electronic drive likely to contain responsive records" using variations of plaintiff's name ("Roger Charles Day, Jr.," "Roger Day," and "Roger C. Day") without a restriction by date range. *Id.* ¶ 21; *see* Def. SMF ¶¶ 21-23; Pl. SMF ¶¶ 21-23.

### c. United States Embassy in Belmopan, Belize

The declarant explains that a United States Embassy, generally, "conduct[s] activities [to] promot[e] U.S. policy objectives and protect[] both U.S. interests and U.S. citizen [interests] overseas." Stein Decl. ¶ 22. For example, the United States Embassy in Belmopan ("Embassy Belmopan") "promotes the interests and values of the United States by working together with Belize for the continued development of a democratic . . . and prosperous Belize." *Id.* ¶ 23. An

embassy or consulate employs Foreign Service Officers, Specialists, and locals, and staffing patterns and records management systems are tailored to that embassy's needs.  *See id.* ¶ 22.

Three officials conducted searches of Embassy Belmopan files.  The current Regional Security Officer ("RSO") at Embassy Belmopan conducted a search of embassy records to include classified and unclassified emails in the "Fugitive Files" and electronic drives using the search term "Roger Charles Day" within the date range from 2008 to 2013.  *See id.* ¶ 24; Decl. of Kirk F. Heim (ECF No. 31-2, "Heim Decl.") ¶ 7; Def. SMF ¶ 25; Pl. SMF ¶ 25.

The Acting Chief of the Political/Economic Section searched the office's "shared systems/files, including shared drives and archived paper files" using four variations of plaintiff's name ("Day," "Roger Day," "Roger Charles Day," and "Roger Charles Day, Jr.") as search terms without a date restriction.  Stein Decl. ¶ 25; Def. SMF ¶ 26; Pl. SMF ¶ 26.  Lastly, the Consular Chief searched "office email files, archives, shared drive, and databases using four variations of plaintiff's name ("Roger," "Roger Charles," "Roger Charles Day," and "Day") and plaintiff's date of birth as search terms without a date restriction.  Stein Decl. ¶ 26; Def. SMF ¶ 27; Pl. SMF ¶ 27.

### d. eRecords Archive

The declarant describes the eRecords Archives as the State "Department's central repository for storing permanent electronic records transferred to the Bureau of Administration." Stein Decl. ¶ 27.  This system includes "correspondence, diplomatic notes, cables, all emails sent and received on the state.gov network since January 1, 2017, and retired records transferred to the Bureau of Administration in digital form, including the pre-2017 email records of certain former senior officials."  *Id.*  It is a searchable system which "allows users to export copies of

records into the [State] Department's case management system for reviewing and processing." *Id.*

A Government Information Specialist searched the eRecords Archive for classified and unclassified records using variations of plaintiff's name as search terms within a range from January 1, 2007, to December 31, 2008.  *Id.* ¶ 28; Def. SMF ¶ 20; Pl. SMF ¶ 20.

### e. Plaintiff's Challenges to State Department's Searches

Plaintiff challenges both the method and the results of the State Department's searches.[3] Regarding the method of search, plaintiff objects to the use of different terms to search the State Department's databases.  *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. (ECF No. 22, "Pl.'s Opp'n") at 3.  He fails to demonstrate, however, that using variations of his name, or using other search terms such as his date of birth, or the imposition of a date range, was unreasonable. Ordinarily it is not a requester's role to dictate search terms, leaving to the agency's discretion the selection of whatever search terms it deems reasonably designed to locate responsive records. *See Bigwood v. U.S. Dep't of Defense*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015).  This is not a situation where State Department personnel chose wildly different search terms and, consequently, conducted "widely divergent searches."  *Tushnet v. U.S. Immigr. & Customs Enf't*, 246 F. Supp. 3d 422, 434 (D.D.C. 2017) (ordering agency to reevaluate its searches, which used "widely varying search terms . . . across the twenty-six field offices tasked with searching for responsive records," certain of which were "facially lacking, with some not even including terms explicitly called out in [plaintiff's] request").  Here, the variations were minimal, and the Court is satisfied that the State Department's searches were reasonably calculated to locate information

---

[3]     The State Department addressed plaintiff's challenges to the Vaughn Index, *see* Pl.'s Opp'n at 6, by submitting an updated version with its Reply in Support of Def.'s Mot. for Summ. J. (ECF No. 24-3).

responsive to plaintiff's FOIA request.  *See Liberation Newspaper v. U.S. Dep't of State*, 80 F.

Supp. 3d 137, 146 (D.D.C. 2015) ("Although the defendant used different search terms for

different databases, this discrepancy does not undermine the conclusion that the search was

reasonable given that the search terms were used after consultation with employees familiar with

the databases and were reasonably designed to yield responsive information.").

Also, plaintiff deems the results of the searches unacceptable.  He faults the State

Department for failing to release documents to which certain responsive records referred.  For

example, plaintiff quotes an email message (A-00000285917) indicating that the writer sent the

recipient information via a separate secure email message, and plaintiff demands disclosure of

the documents to which the email referred.  *See* Pl.'s Opp'n at 2-3.  Plaintiff wants a perfect

search yielding every conceivable bit of information about him, but the agency need only

conduct a reasonable search.  "The fact that some disclosed documents may reference other

documents that were not produced, standing alone, does not foreclose a grant of summary

judgment to the government."  *Pinson v. Dep't of* Justice, 61 F. Supp. 3d 164, 179 (D.D.C. 2015)

(citing *Steinberg*, 23 F.3d at 552).  If plaintiff were correct, "an agency responding to FOIA

requests might be forced to examine virtually every document in its files, following an

interminable trail of cross-referenced documents like a chain letter winding its way through the

mail."  *Steinberg*, 23 F.3d at 552.  Here, defendant demonstrates that its searches were

reasonably calculated to locate records responsive to plaintiff's FOIA request.

### 2. FOIA Exemptions

#### a. Exemption 5

Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or

letters which would not be available by law to a party other than an agency in litigation with the

9

agency." 5 U.S.C. § 552(b)(5).  "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not available in discovery, it may be withheld from FOIA requesters."  *Burka v. U.S. Dep't of Health & Human Servs*., 87 F.3d 508, 516 (D.C. Cir. 1996) (internal quotation marks omitted); *see NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975).  This exemption "is interpreted to encompass . . . three evidentiary privileges: the deliberative process privilege, the attorney-client privilege, and the attorney work product privilege."  *Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002); *see Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Educ*., 905 F. Supp. 2d 161, 173 (D.D.C. 2012) (citations omitted).  Relevant here is the deliberative process privilege.

The State Department withheld a portion of one document (A-00000285931) and withheld in full a second document (A-00000285912) under Exemption 5.  From the first document defendant redacted one paragraph of an email from the Regional Security Officer in Belize to an investigator at the U.S. Department of Defense reflecting the Regional Security Officer's "views about one method of apprehending Plaintiff might be preferable to another." Vaughn Index at 14.  Defendant deems the document predecisional because, at that time, the authorities had not yet chosen a method for apprehending plaintiff, and deliberative because the Regional Security Officer was offering his opinion to the Department of Defense, which would have final decisionmaking authority with respect to plaintiff's apprehension.  *See id.*; Stein Decl. ¶ 32.  The second document is "a non-final segment" of a redlined Word document.  Vaughn Index at 15.  Defendant considers the document predecisional and deliberative given "it is a non-final segment of a draft document."  *Id.*; *see* Stein Decl. ¶ 33.

The declarant asserts that release of this information poses two potential harms: "inhibit[ed] communication and cooperation among agency law enforcement components," Stein

Decl. ¶ 32, and chilling effects on "the free flow [and] exchange of ideas" among federal law enforcement agencies, *id.*, and "employees' internal drafting processes," *id.* ¶ 33.   Plaintiff does not object to these withholdings, and the Court concludes that the State Department justifies its reliance on Exemption 5.

### b. Exemption 7

### *i.* Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm.   *See* 5 U.S.C. § 552(b)(7); *FBI v. Abramson*, 456 U.S. 615, 622 (1982).   "To show that the . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between [an] investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law."   *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (citations and internal quotation marks omitted).

The declarants explain that the Bureau of Diplomatic Security "is the security and law enforcement arm" of the State Department.   Stein Decl. ¶ 41; *see* Heim Decl. ¶ 3.   Diplomatic Security Service Special Agents and other personnel are assigned to Regional Security Offices at United States Embassies and Consulates, Heim Decl. ¶ 4, and the Regional Security Offices serve as the State Department's "point of contact with law enforcement and security agencies of host nations," *id.* ¶ 5.   Among other functions, a "Regional Security Office works with its law enforcement counterparts abroad to pursue investigative leads on U.S. fugitives[.]"   *Id.* ¶ 6.

All of the "documents at issue in this case were collected as part of the U.S. Government's law enforcement efforts to locate . . . [p]laintiff," Stein Decl. ¶ 45, "who was a

fugitive in Belize and Mexico, from which he was extradited in 2010," Heim Decl. ¶ 9.  The

records "include e-mails sent to and from the Regional Security Officer and law enforcement

personnel from the Department of Defense and Department of Justice, Plaintiff's 'Wanted'

poster, [and] photographs of Plaintiff and individuals associated with him."  Heim Decl. ¶ 9.

Defendant's supporting declarations, as well as the descriptions of the responsive records in the

Vaughn Index, support the conclusion that the responsive records fall within the scope of

Exemption 7.[4]

### *ii.* Exemption 7(C)

Exemption 7(C) protects from disclosure information in law enforcement records that

"could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5

U.S.C. § 552 (b)(7)(C).  In determining whether this exemption applies to particular material, the

Court must balance the interest in privacy of individuals mentioned in the records against the

public interest in disclosure.  *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C.

Cir. 2007); *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).  The privacy interest

at stake belongs to the individual, not the government agency, *see U.S. Dep't of Justice v.*

*Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989); *Nat'l Ass'n of Retired*

*Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989), and "individuals have a strong

interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. Fed.*

---

[4]      The State Department relies on Exemption 6 in conjunction with Exemption 7(C) to
protect names, telephone numbers, email addresses, and other personally identifiable information
about federal government personnel. Stein Decl. ¶¶ 35, 38; *see, e.g,* Vaughn Index at 1-2 (Doc.
Nos. 1-2).  Where, as here, defendant demonstrates that all the responsive records were
"compiled for law enforcement purposes, thus implicating Exemption 7(C), [the Court has] no
need to consider Exemption 6 separately because all information that would fall within the scope
of Exemption 6 would also be immune from disclosure under Exemption 7(C)." *Roth v. U.S.
Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (internal quotation marks omitted)).

*Bureau of Investigation*, 737 F.2d 84, 91-92 (D.C. Cir. 1984).  When balancing the private

interest against the public interest in disclosure, "the only public interest relevant for purposes of

Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their

government is up to.'"  *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992)

(quoting *Reporters Comm.*, 489 U.S. at 773); *see also Sussman*, 494 F.3d at 1115.  It is the

requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy

interest, and the public interest must be significant.  *See Nat'l Archives and Records Admin. v.

Favish*, 541 U.S. 157, 172 (2004).

Defendant withholds "identifying information of law enforcement officers and

individuals named in the [responsive] records" under Exemption 7(C).  Stein Decl. ¶ 43.  The

declarant explains that the records "were collected as part of the U.S. Government's efforts to

locate and extradite [p]laintiff," *id.* ¶ 45, and identifies no public interest to outweigh the third

parties' privacy interests; *see generally* Vaughn Index.

Plaintiff raises two objections to the State Department's reliance on Exemption 7(C).[5]

First, he points to the disclosure of the name of an agent with the Defense Department's Office

of Inspector General, *see* Pl.'s Opp'n at 4, and leaps to the conclusion that the State Department

thus has waived its right to invoke Exemption 7(C) at all, *see id.* at 4-5.  He is mistaken.  A

single inadvertent disclosure of a third party's name does not call for the disclosure of all third

party information.  *See Billington v. Dep't of Justice*, 69 F. Supp. 2d 128, 137 (D.D.C. 1999)

("The disclosure of unredacted records due to an administrative error does nothing to diminish

---

[5]     Defendant addressed plaintiff's complaint that the State Department redacted "the
sending agency's identification" from certain email messages and released the same information
in others, *see* Pl.'s Opp'n at 5, when it "re-released . . . documents on which it had previously
redacted an agency domain extension with the redaction lifted."  Reply in Support of Def.'s Mot.
for Summ. J. (ECF No. 24) at 6; *see id.*, Ex. 2 (ECF No. 24-2).

the magnitude of the privacy interests of the individuals named in such reports."); *Kirk v. U.S. Dep't of Justice*, 704 F. Supp. 288, 292 (1989) ("The fact that one document does disclose some names . . . does not mean that the privacy rights of these or others are waived[.]").  Furthermore, the right to privacy belongs to the third party mentioned in law enforcement records, not the agency maintaining those records, and the State Department may not waive protection on any third party's behalf.

Second, plaintiff argues that "[t]he names and addresses (email and physical)" withheld by the State Department "have been in the public domain," such that protection under Exemption 7(C) is not warranted.  *See* Pl.'s Response to Def.'s Change in Circumstance "Reply" Supporting its Mot. for Summ. J. and Pl.'s Cross-Mot. for Summ. J. under the Privacy Act (ECF No. 26, "Pl.'s X-MSJ") at 7 (page numbers designated by CM/ECF).  He points to the public docket of his criminal case and identifies one Special Agent of the Defense Criminal Investigative Service whose statements to the press and business card revealed his name, employment, office address, email address, and telephone, cell phone and fax numbers.  *See id.* at 7, 9.  Plaintiff also notes that such information already had been disclosed to him and his defense counsel before or during his criminal trial in the U.S. District Court for the Eastern District of Virginia.  *See id.* at 13.

"Under [the] public-domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record," *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999), and an agency "may not rely on an otherwise valid exemption to justify withholding information that is already in the public domain," *Canning v. U.S. Dep't of Justice*, 567 F. Supp. 2d 104, 112 (D.D.C. 2008) (citing *Students Against Genocide v. Dep't of State*, 257 F. 3d 828, 836 (D.C. Cir. 2001)); *see Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999) ("[T]he logic of

14

FOIA [mandates that] if identical information is truly public, then enforcement of an exemption cannot fulfill its purpose.").  Plaintiff bears the initial burden "of pointing to specific information in the public domain that appears to duplicate that being withheld."  *Afshar v. Dep't of State,* 702 F.2d 1125, 1129 (D.C. Cir. 1983).  "This is so . . . because the task of proving the negative – that information has *not* been revealed – might require the government to undertake an exhaustive, potentially limitless, search."  *Davis*, 968 F.2d at 1279.

"Prior disclosure of similar information does not suffice" to overcome a claimed FOIA exemption; "instead, the specific information sought by the plaintiff must already be in the public domain."  *Wolfe v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (citation omitted).  Plaintiff fails to identify any information withheld under a FOIA exemption which duplicates information the government has made public previously.  It is not enough to assert that a DCIS Special Agent spoke publicly without showing that his statements to the press include the same information at issue in this case.  Similarly, it is not enough to point to the public docket of a criminal case generally without identifying a particular document substantially similar to a document or portion of a document withheld by the State Department.  *See Davis*, 968 F.2d at 1280 (concluding "that to obtain portions of tapes alleged to be in the public domain, [requester] has the burden of showing that there is a permanent public record of the exact portions he wishes"); *Kowal v. U.S. Dep't of Justice.*, No. 18-CV-938, 2021 WL 3363445, at *5 (D.D.C. Aug. 3, 2021) (concluding that, even if "identities of some individuals involved in the investigation were revealed at trial," requester "does not meet her burden to show that the identical documents and information that [the agency] seeks to withhold here were made public then"); *Bartko v. U.S. Dep't of Justice*, 167 F. Supp. 3d 55, 72 (D.D.C. 2016) (rejecting public domain argument where

requester had not "identified the precise documents released by [agency] that are substantially identical to other documents the agency is withholding").

Plaintiff is no more successful arguing that disclosure of information in the context of a criminal prosecution puts the information in the public domain.  *See Cottone*, 193 F.3d at 556 ("a constitutionally compelled disclosure to a single party simply does not enter the public domain"); *Lewis v. Dep't of Justice*, 609 F. Supp. 2d 80, 85 (D.D.C. 2009) (rejecting argument that government "waived its right to invoke FOIA exemptions because of disclosures made to him during his criminal proceedings"), *aff'd sub nom. Lewis v. U.S. Dep't of Justice*, No. 09-5225, 2010 WL 1632835 (D.C. Cir. Apr. 7, 2010).

### *iii*. Exemption 7(D)

Exemption 7(D) protects "records or information compiled for law enforcement purposes [which] could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source."  5 U.S.C. § 552(b)(7)(D).  The State Department withholds the names of and information provided by confidential sources who cooperated with law enforcement in an investigation to locate, apprehend and extradite plaintiff, who ultimately was "convicted of wire fraud, conspiracy to commit wire fraud, conspiracy to commit money laundering, and conspiracy to commit smuggling."  Stein Decl. ¶ 47.

The declarant states that these confidential sources provided information under "implicit assurances of confidentiality."  *Id.*  He explains that the sources "were connected to [p]laintiff in a variety of . . . ways," and that they provided "[c]ertain information" that was "singular in nature and, if released, could reveal their identities."  *Id.*  Further, the declarant states, disclosure

of the sources' identities and information they provided "could have subjected them to reprisal as law enforcement authorities attempted to locate [p]laintiff." *Id.* In addition, the declarant explains that the government relies on confidential sources to further its law enforcement efforts, and disclosure of sources' identities not only could endanger the sources' lives but also could discourage cooperation of other sources in future investigations. *See id.* ¶ 48.

Plaintiff does not challenge the State Department's reliance on Exemption 7(D), and the Court concludes that defendant properly withheld the names of and information provided by confidential sources.

### *iv*. Exemption 7(E)

Exemption 7(E) permits the government to withhold "records or information compiled for law enforcement purposes" if "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Here, the State Department withholds "information related to certain techniques used to track [p]laintiff, details regarding the use of certain tools to assist investigators in gathering information and evidence, and the assignment of law enforcement personnel to specific activities, the details of which are not well-known to the public." Stein Decl. ¶ 52. Further, the declarant explains that the information withheld includes plaintiff's "whereabouts, business associates, habits and other activities, . . . law enforcement plans to arrest [p]laintiff[,] and discussions about whether to provide a reward to confidential informants." *Id.* According to the declarant, if this information were released, it "could provide insight into the methods used to apprehend and extradition [p]laintiff" and "show[] the kinds of access law enforcement agencies had to [p]laintiff before his ultimate arrest." *Id.* And if

information about the techniques and procedures employed to effect plaintiff's arrest were released, it "could . . . provide those seeking to circumvent law enforcement efforts in the future with a roadmap" to evade detection.  *Id.*  Thus, absent any challenge by plaintiff, the Court concludes that the State Department adequately justifies its reliance on Exemption 7(E).

### 3. Segregability

"FOIA provides that '[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt.'"  *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (alteration in original) (quoting 5 U.S.C. § 552(b)); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999).  Thus, "a district court clearly errs when it approves the government's withholding of information under the FOIA without making an express finding on segregability."  *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007) (quoting *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 252 (D.C. Cir. 1993)).

The Court accepts the declarant's representation that IPS staff reviewed the responsive records, line-by-line, Stein Decl. ¶ 54, "to ensure that all non-exempt, segregable information was released to" plaintiff, *id.* ¶ 15.

### B. Plaintiff's Cross-Motion for Summary Judgment

In his cross-motion for summary judgment, plaintiff argues that the State Department waived any Privacy Act exemption it could have raised by failing to make the argument in its summary judgment motion.  *See* Pl.'s X-MSJ at 3-7.[6]  Consequently, he argues, defendant "must

---

[6]   Given plaintiff's *pro se* status, the Court excuses plaintiff's failure to file his cross-motion along with his response to defendant's summary judgment motion and to submit a statement of material facts as Local Rule 7(h)(1) and the Standing Order require.

be ordered to produce the withheld documents without exemption in their entirety and without further delay." *Id.* at 7.  Plaintiff's motion fails for two reasons.

First, plaintiff fails to identify what information withheld under FOIA should be released under the Privacy Act.  The Court presumes that plaintiff's references to "Document 24 et seq." and Documents 18 and 24, *see* Pl.'s X-MSJ at 3, pertain to the email messages (Documents 17-31) released in part by the State Department in March 2021, *see* Vaughn Index at 10-11. Plaintiff mistakenly asserts that defendant has not claimed exemptions with respect to these documents, *see* Pl.'s X-MSJ at 3, yet the Vaughn Index shows that defendant relies on FOIA Exemptions 6, 7(C), 7(D) and 7(E) in various combinations.  "[W]here the FOIA requires disclosure, the Privacy Act will not stand in its way, but where the FOIA would permit withholding under an exemption, the Privacy Act makes such withholding mandatory upon the agency." *News-Press v. U.S. Dep't of Homeland Sec.*, 489 F.3d 1173, 1189 (11th Cir. 2007).

Second, defendant demonstrates that the responsive records were maintained in a Bureau of Diplomatic Security system of records which is exempt from access provisions of the Privacy Act.[7]  *See* Second Decl. of Susan C. Weetman (ECF No. 38-1, "Second Weetman Decl.") ¶ 5. The Privacy Act permits an agency head to "promulgate rules . . . to exempt any system of records within the agency from any part of this section," with exceptions not relevant here, if the system of records is

> (2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities

---

[7]     *See* 5 U.S.C. 552a(d)(1) ("Each agency that maintains a system of records shall . . . upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof").

of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of

     (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status;

     (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or

     (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a(j)(2). The Secretary of State has done so with respect to the Security Records (STATE-36) maintained by the Bureau of Diplomatic Security. *See* 22 C.F.R. § 171.26(a) (exempting Security Records "from all of the provisions of the [Privacy Act] except paragraphs (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (e)(7), (e)(9), (e)(10), and (e)(11), and (i), to the extent to which they meet the criteria of section (j)(2) of 5 U.S.C. 552a"); *see also* Second Weetman Decl. ¶ 5.

## IV. CONCLUSION

The Court concludes that defendant conducted reasonable searches for records responsive to plaintiff's FOIA request, justified its decision to withhold information under Exemptions 5, 7(C), 7(D), and 7(E), and released all reasonably segregable information. Further, the Court finds that any claim based on the Privacy Act cannot survive. Accordingly, the State Department's motion for summary judgment will be granted, and plaintiff's cross-motion will be denied. An Order is issued separately.

DATE: August 25, 2022                  EMMET G. SULLIVAN
                                           United States District Judge